## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF KENTUCKY

## PADUCAH DIVISION

------------------------------------------------------------------

GREGORY ALLEN PEET, SR.,

Pro Se

   Plaintiff,

v.

Civil Action No. 5:26-cv-61-JHM

FILED
JAMES J. VILT, JR. - CLERK
MAR 10 2026
U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

1. MCCRACKEN COUNTY, KENTUCKY;

2. KENTUCKY CABINET FOR HEALTH AND FAMILY SERVICES (CHFS);

3. DEPARTMENT FOR COMMUNITY BASED SERVICES (DCBS);

4. CHILD PROTECTIVE SERVICES (CPS);

5. HOPE HARPER, in her individual and official capacities;

6. UNKNOWN CPS WORKERS 1–3, in their individual capacities;

7. JOHN/JANE DOE SUPERVISORS 1–3, in their individual capacities;

and

8. ANY OTHER UNKNOWN OFFICIALS RESPONSIBLE FOR APPROVAL,

SUPERVISION, OR EXECUTION OF THE ACTIONS DESCRIBED HEREIN,

   **Defendants et. al.**

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### (42 U.S.C. § 1983 and Kentucky Law)

------------------------------------------------------------------

## II. JURISDICTION AND VENUE

2.1   This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983, which provides a civil cause of action for the deprivation of rights secured by the Constitution by persons acting under color of state law.

2.2   This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because Plaintiff asserts claims arising under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

2.3   This Court has jurisdiction under 28 U.S.C. § 1343(a)(3) and (4), which provide jurisdiction over civil rights actions seeking redress for the deprivation of constitutional rights under color of state law.

2.4   This Court has supplemental jurisdiction over Plaintiff's state-law claims, including Abuse of Process and Defamation, pursuant to 28 U.S.C. § 1367(a),

because those claims arise from the same nucleus of operative facts as the federal claims.

2.5   Venue is proper in the Western District of Kentucky, Paducah Division, under 28 U.S.C. § 1391(b), because all events, omissions, and injuries giving rise to this action occurred in McCracken County, Kentucky, and all Defendants reside in this District or are employed within it.

2.6   At all relevant times, Defendants acted under color of state law through the Kentucky Cabinet for Health and Family Services (CHFS), the Department for Community Based Services (DCBS), and Child Protective Services (CPS), and through McCracken County authority.

2.7   Plaintiff seeks declaratory relief, injunctive relief, compensatory damages, punitive damages against individual-capacity defendants, and all other relief available under federal and Kentucky law.

### III. PARTIES

3.1   Plaintiff GREGORY ALLEN PEET, SR. ("Plaintiff") is an adult resident of McCracken County, Kentucky. Plaintiff is the father of the minor children present during the events described in this Complaint. Plaintiff brings this action to vindicate his constitutional rights and to obtain redress for the harms caused by

Defendants' conduct.

3.2   Defendant MCCRACKEN COUNTY, KENTUCKY ("McCracken County") is

a municipal entity organized under the laws of the Commonwealth of Kentucky.

McCracken County is responsible for the actions, policies, customs, supervision,

and training of its employees and agents, including those involved in the events

described herein.

3.3   Defendant KENTUCKY CABINET FOR HEALTH AND FAMILY SERVICES

("CHFS") is the state agency responsible for administering child welfare

programs, including the Department for Community Based Services and Child

Protective Services. CHFS acted under color of state law at all relevant times.

3.4   Defendant DEPARTMENT FOR COMMUNITY BASED SERVICES

("DCBS") is a division of CHFS responsible for child protection investigations,

family services, and enforcement of state child welfare policies. DCBS acted

under color of state law at all relevant times.

3.5   Defendant CHILD PROTECTIVE SERVICES ("CPS") is a subdivision of

DCBS responsible for conducting child abuse and neglect investigations in

McCracken County and throughout Kentucky. CPS acted under color of state law

at all relevant times.

3.6   Defendant HOPE HARPER ("Harper") is a CPS investigator employed by CHFS/DCBS/CPS. Harper personally conducted the investigation at Plaintiff's residence, entered the home, repeated false allegations, attempted to interview minor children without legal authority, and participated in the retaliatory actions described in this Complaint. Harper is sued in her individual and official capacities.

3.7   Defendants UNKNOWN CPS WORKERS 1–3 are employees or agents of CHFS/DCBS/CPS who assisted, participated in, or approved the investigation at Plaintiff's residence. Their identities are presently unknown. They are sued in their individual capacities.

3.8   Defendants JOHN/JANE DOE SUPERVISORS 1–3 are supervisory officials within CHFS/DCBS/CPS responsible for reviewing, approving, directing, or overseeing the investigation at Plaintiff's residence. Their identities are presently unknown. They are sued in their individual capacities.

3.9   Defendants ANY OTHER UNKNOWN OFFICIALS RESPONSIBLE FOR APPROVAL, SUPERVISION, OR EXECUTION OF THE ACTIONS DESCRIBED HEREIN include any individual who authorized, directed, supervised, or ratified the conduct at issue. Their identities are presently unknown. They are sued in their individual capacities.

3.10   At all relevant times, each Defendant acted under color of state law and within the

scope of their employment, authority, or official duties, and their actions are

attributable to the governmental entities named herein.

## SECTION IV — STATEMENT OF FACTS (Fully Integrated, Numbered, Expanded)

**4.1 Overview**  Plaintiff alleges that Defendants, acting under color of state law, initiated and

conducted an unlawful CPS investigation in retaliation for Plaintiff's protected legal activity and

in reliance on false Missouri information. These actions mirror a pattern previously experienced

by Plaintiff and his children in Missouri in 2024, demonstrating a multi-state continuation of the

same unconstitutional conduct with a common agenda to retaliate and suppress.

**4.2 Missouri Background and False Classification**

4.2.1 Plaintiff was subjected to a void Missouri judgment containing factual and legal

defects.

4.2.2 Missouri's erroneous classification repeatedly triggered unwarranted actions in

multiple states.

4.2.3 Upon information and belief, Missouri disseminated inaccurate information through

interstate systems used by Kentucky CPS.

4.2.4 Kentucky Defendants relied on this false information without verification, despite

its facial inconsistencies.

4.2.5 The false Missouri data was a substantial factor in initiating the Kentucky

investigation.

**Supporting Exhibits:** A, C

### 4.3 Multi-State Retaliatory Pattern to Disrupt Federal Litigation

4.3.1 Plaintiff alleges that the actions taken by Kentucky CPS in 2024–2025 are not isolated, but instead represent a continuation of a **multi-state pattern** in which state agencies initiate sudden, intrusive, and unverified child-welfare investigations **immediately after** Plaintiff files or pursues federal civil-rights lawsuits.

4.3.2 In **2024**, Missouri DFS initiated an investigation based on the same false classification data shortly after Plaintiff filed a §1983 action.

4.3.3 During the Missouri incident, Plaintiff's children were subjected to questioning, fear, and confusion, as captured in video and audio recordings. The children can be heard reacting with distress when Missouri DFS repeated the false "sex offender" allegation.

4.3.4 Plaintiff alleges that Kentucky CPS repeated the **same sequence of events** in 2024–2025:

    A.  the same false Missouri data,

    B.  the same unverified allegations,

    C.  the same attempt to separate and interview the children,

    D.  the same timing immediately following Plaintiff's protected legal activity.

4.3.5 Upon information and belief, state actors in both Missouri and Kentucky relied on the same inaccurate interstate data, failed to verify its accuracy, and initiated

investigations in a manner that had the foreseeable effect of **disrupting, delaying, or chilling Plaintiff's ability to pursue federal litigation**.

4.3.6 Plaintiff alleges that this pattern demonstrates a misuse of state investigative power that has repeatedly displaced Plaintiff's family, diverted Plaintiff's time and resources, and caused emotional harm to the children, who have now experienced this process in **multiple states** within a short period of time.

**Supporting Exhibits:** A, C, Missouri 2024 video/audio evidence

## 4.4 Plaintiff's Protected Activity Prior to the Kentucky CPS Visit

4.4.1 Plaintiff submitted a formal demand letter and initiated legal action against local government entities.

4.4.2 Defendants were aware of Plaintiff's protected activity.

4.4.3 Upon information and belief, internal communications referenced Plaintiff's legal filings.

4.4.4 The Kentucky CPS investigation occurred immediately afterward, mirroring the Missouri 2024 sequence.

**Supporting Exhibits:** C

## 4.5 Arrival of CPS Investigator Harper

4.5.1 Harper arrived at Plaintiff's home without prior notice.

4.5.2 Harper repeated the same false Missouri allegations used in 2024.

4.5.3 Harper admitted she had not verified any allegations.

4.5.4 Upon information and belief, Harper relied solely on unverified Missouri data.

**Supporting Exhibits:** A

### 4.6 Warrantless Entry and Search

4.6.1 Harper entered Plaintiff's home without a warrant, court order, or exigent circumstances.

4.6.2 Plaintiff did not consent.

4.6.3 Children were safe, visible, and not in danger.

4.6.4 Unknown CPS Workers 1–3 assisted in the entry.

**Supporting Exhibits:** A, B

### 4.7 Attempted Unlawful Separation of Children

4.7.1 Harper attempted to interview Plaintiff's minor children privately without legal authority.

4.7.2 Plaintiff objected and cited constitutional protections.

4.7.3 Harper insisted despite lack of legal justification.

4.7.4 The children reacted with fear and confusion, similar to their reactions during the Missouri 2024 incident.

4.7.5 Upon information and belief, the children's distress is directly tied to repeated exposure to false allegations across states.

**Supporting Exhibits:** A, Missouri 2024 video

### 4.8 Conditions Inside the Home

4.8.1 The home contained adequate food, supplies, and safe living conditions.

4.8.2 The children were healthy and not in danger.

4.8.3 Plaintiff was lawfully homeschooling.

4.8.4 Plaintiff maintained transportation.

**Supporting Exhibits:** A, B

## 4.9 Supervisory and Agency Failures

4.9.1 Supervisors approved or ratified the investigation without verification.

4.9.2 CHFS/DCBS maintained policies allowing warrantless entry and reliance on unverified data.

4.9.3 These failures mirror Missouri's 2024 failures, showing a multi-state pattern of systemic disregard for verification and constitutional limits.

**Supporting Exhibits:** C

## 4.10 Multi-State Pattern and Continuing Violations

4.10.1 The Kentucky investigation is part of a broader pattern of harm caused by Missouri's void judgment.

4.10.2 Missouri DFS in 2024 and Kentucky CPS in 2024–2025 relied on the same false data.

4.10.3 Upon information and belief, interstate data systems were not corrected despite notice.

4.10.4 The children's repeated distress demonstrates ongoing harm and foreseeable emotional injury.

**Supporting Exhibits:** A, C, Missouri 2024 video

**4.11 Injuries to Plaintiff and Children**

4.11.1 Plaintiff suffered emotional distress, reputational harm, invasion of privacy, and constitutional injury.

4.11.2 Plaintiff's children suffered fear, confusion, and emotional harm during both the Missouri 2024 and Kentucky 2024–2025 incidents.

4.11.3 The video evidence captures the children's reactions and supports the foreseeability of harm.

4.11.4 The repeated use of false Missouri data across states magnifies damages.

**Supporting Exhibits:** A, B, C, Missouri 2024 video

**4.12 Required CPS Protocol and Legal Standards Violated by Harper**

4.12.1 Plaintiff alleges that Defendant Harper failed to follow the mandatory procedures required by Kentucky administrative regulations, Kentucky statutes, and federal constitutional law governing child protective investigations.

4.12.2 Under **922 KAR 1:330**, CPS workers must conduct an **initial determination** (screening) before any contact with a family. This includes verifying the source of the report, confirming whether the allegations meet the statutory definition of abuse or neglect, and evaluating risk factors. Harper admitted she had **not verified any allegations** before arriving at Plaintiff's home, in violation of 922 KAR 1:330, Sections 1–2.

4.12.3 Kentucky law requires CPS to verify information and assess the family's situation **before** taking intrusive action.

**Authority:** 922 KAR 1:330, Section 1(2) ("Assessment").

- **Harper did not verify any information and instead repeated false Missouri data without checking accuracy.**

4.12.4 Kentucky statutes define abuse and neglect under **KRS 600.020,** and CPS may only investigate allegations that meet those definitions. Harper did not articulate any allegation that met statutory criteria, nor did she document any basis for an investigation.

4.12.5 Kentucky law prohibits CPS workers from entering a home without **consent,** a **court order,** or **exigent circumstances.**
**Authority:** KRS 620.010–620.050; Fourth Amendment.

- **Harper entered Plaintiff's home without consent, without a warrant, and without any emergency.**

4.12.6 Kentucky law does **not** allow CPS to separate children from parents for interviews unless there is immediate danger or a court order.
**Authority:** KRS 620.072; 922 KAR 1:330.

- **Harper falsely claimed that "protocol" required private interviews, which is not supported by any Kentucky statute or regulation.**

4.12.7 Kentucky's participation in federal child-protection funding requires compliance with **42 U.S.C. § 5106a,** which mandates proper screening, verification of allegations, respect for constitutional rights, and documentation of findings. Harper's actions violated these federal requirements.

4.12.8 The **Fourth Amendment** prohibits warrantless entry into a home absent consent or exigent circumstances. Harper had neither.

4.12.9 The **Fourteenth Amendment** protects the fundamental right of family integrity. Harper attempted to interview Plaintiff's minor children privately without legal justification, violating this right.

4.12.10 The **First Amendment** prohibits retaliation for filing lawsuits or engaging in protected speech. Harper arrived immediately after Plaintiff's legal filings, mirroring the Missouri 2024 pattern, supporting a First Amendment retaliation claim.

4.12.11 Plaintiff alleges that Harper's conduct violated Kentucky administrative law, Kentucky statutory law, and federal constitutional law, and that **no portion of her actions complied with required CPS protocol**.

4.12.12 These violations directly support the constitutional and statutory claims in Sections V and VI and demonstrate that Harper's actions were not the result of mistake or negligence, but of deliberate disregard for established legal requirements.

---

## SECTION XIII — PUBLIC IMPACT, WITNESS OBSERVATIONS, AND RESULTING STIGMA

### 4.13 Public Exposure and Stigma

4.13.1 Plaintiff alleges that the arrival of CPS investigators at his residence caused immediate public attention, as neighbors and bystanders observed state officials approaching the home.

4.13.2 Upon information and belief, individuals in the vicinity overheard portions of the interaction, including references to "child welfare," "investigation," and other terms that carry significant stigma.

4.13.3 Plaintiff alleges that the presence of CPS vehicles and personnel created the false appearance that Plaintiff's family was in danger or that Plaintiff had engaged in wrongdoing, despite no evidence supporting such conclusions.

4.13.4 This public exposure caused Plaintiff and his family significant embarrassment, fear, and reputational harm.

### 4.14 Fear of Housing Consequences

4.14.1 Plaintiff alleges that the sudden appearance of CPS created a reasonable fear that he and his family could face housing consequences, including the possibility of being removed or displaced.

4.14.2 Plaintiff and his family experienced stress and anxiety due to the belief that CPS involvement could trigger landlord action, eviction, or further state intrusion.

4.14.3 These fears were heightened because Plaintiff had previously experienced similar trauma in Missouri in 2024, where DFS involvement created instability and fear of displacement.

### 4.15 Children's Emotional Response

4.15.1 Plaintiff alleges that his children became visibly distressed, confused, and fearful during the Kentucky CPS encounter, mirroring their reactions during the Missouri 2024 DFS incident.

4.15.2 The children expressed fear that they might be taken away or that the family might be forced out of their home.

4.15.3 These reactions were foreseeable consequences of repeated exposure to false allegations and state intrusion across multiple states.

4.15.4 The emotional harm to the children is documented in video and audio evidence.

**4.16 Witness Statement of Carter**

4.16.1 Plaintiff alleges that a witness, identified as **Carter,** approached during or immediately after the CPS encounter.

4.16.2 Carter stated that he had observed Plaintiff's family regularly and had **never seen any signs of harm, neglect, danger, or mistreatment**.

4.16.3 Carter further stated that the children appeared healthy, well-cared-for, and safe, contradicting every allegation presented by Harper.

4.16.4 Carter confirmed that there was **no basis for further investigation,** and that the CPS presence was unwarranted.

4.16.5 Upon information and belief, Carter's observations align with the factual conditions inside the home and contradict the unverified Missouri data relied upon by Harper.

**4.17  Impact on Retaliation and Causation Analysis**

4.17.1 The public nature of the CPS visit amplified the retaliatory effect of the investigation, as it caused reputational harm and community stigma.

4.17.2 The fear of displacement and the emotional distress experienced by the children demonstrate the severity of the adverse action taken against Plaintiff.

4.17.3 Carter's statements provide independent corroboration that no harm existed, strengthening the inference that the investigation was not based on legitimate child-welfare concerns.

4.17.4 These facts support the First Amendment retaliation claim, the Fourteenth Amendment family-integrity claim, and the Monell claims regarding improper policies and customs.

## 4.18 Connection to Multi-State Pattern

4.18.1 Plaintiff alleges that the Kentucky incident mirrors the Missouri 2024 DFS incident, where similar false allegations, public exposure, and emotional harm occurred.

4.18.2 The repetition of these events across states demonstrates a continuing pattern of harm caused by the same false Missouri data.

4.18.3 This multi-state pattern supports Plaintiff's claims for injunctive relief, damages, and correction of interstate data systems.

## SECTION V — ACTOR-BY-ACTOR LIABILITY (Expanded, Detailed, Numbered)

**5.1 Overview** Plaintiff alleges that each Defendant, acting under color of state law, engaged in specific conduct that directly caused constitutional and statutory injuries. Liability is established through individual actions, supervisory failures, and entity-level policies and customs.

**5.2 Defendant Hope Harper (Individual Capacity)**

5.2.1 Plaintiff alleges Harper personally initiated the investigation without verifying any allegations.

5.2.2 Harper repeated false Missouri allegations ("convicted child sex offender," malnourished children, truancy) despite knowing she had no supporting documentation.

5.2.3 Harper entered Plaintiff's home without a warrant, court order, or exigent circumstances.

5.2.4 Harper attempted to interview Plaintiff's minor children privately, asserting a "protocol" that does not exist under Kentucky law.

5.2.5 Harper acted immediately after Plaintiff filed protected legal actions, establishing retaliatory motive.

5.2.6 Harper relied on false interstate data despite obvious inconsistencies, demonstrating reckless disregard for truth.

5.2.7 Harper's conduct caused emotional distress to Plaintiff's children, who had already experienced similar trauma during the Missouri 2024 DFS incident.

5.2.8 Upon information and belief, Harper acted with deliberate indifference to Plaintiff's constitutional rights.

**Liability:** Direct personal participation; First Amendment retaliation; Fourth Amendment unlawful entry; Fourteenth Amendment family integrity; defamation; due process violations.

**Exhibits:** A, B, C, Missouri 2024 video.

### 5.3 Unknown CPS Workers 1–3 (Individual Capacity)

5.3.1 Assisted Harper in warrantless entry.

5.3.2 Supported Harper's attempt to unlawfully separate and interview the children.

5.3.3 Relied on unverified Missouri data.

5.3.4 Failed to intervene despite clear constitutional violations.

5.3.5 Upon information and belief, acted under direction of supervisors without proper training.

**Liability:** Fourth Amendment; Fourteenth Amendment; failure to intervene; due process.

**Exhibits:** A.

### 5.4 John/Jane Doe Supervisors 1–3 (Individual & Official Capacity)

5.4.1 Approved or ratified the investigation without verifying allegations.

5.4.2 Failed to train Harper and other workers on constitutional requirements.

5.4.3 Allowed reliance on false Missouri data despite notice of its invalidity.

5.4.4 Failed to correct interstate data systems.

5.4.5 Upon information and belief, encouraged or tolerated retaliatory investigations following protected activity.

**Liability:** Supervisory liability; Monell; deliberate indifference.

**Exhibits:** C.

## 5.5 CHFS / DCBS / CPS (Entity Capacity)

5.5.1 Maintained policies/customs allowing warrantless entry without judicial oversight.

5.5.2 Failed to train staff on constitutional limits regarding home entry and child interviews.

5.5.3 Relied on false Missouri data without verification.

5.5.4 Failed to correct known errors in interstate data systems.

5.5.5 Allowed retaliatory investigations following protected legal activity.

5.5.6 Upon information and belief, maintained a pattern of unconstitutional practices across multiple counties.

**Liability:** Monell; policy/custom; failure to train; deliberate indifference.

**Exhibits:** A, C.

## 5.6 McCracken County (Entity Capacity)

5.6.1 Permitted CPS operations and retaliation within the county.

5.6.2 Failed to supervise or oversee CPS actions.

5.6.3 Allowed unconstitutional practices to continue despite notice.

5.6.4 Upon information and belief, maintained customs that foreseeably caused constitutional violations.

**Liability:** Monell; First Amendment; supervisory failure.

**Exhibits:** C.

**SECTION VI — COUNT–ELEMENT–FACT MATRIX (Expanded, Detailed, Numbered)**

**6.1 Overview** Each Count is supported by specific factual allegations from Section IV and documentary evidence from Exhibits A, B, C, and the Missouri 2024 video.

### Count I — First Amendment Retaliation

6.1.1 **Protected Activity:** Plaintiff filed a demand letter and federal legal actions (Sec. 4.4).

6.1.2 **Knowledge:** Harper and supervisors were aware of Plaintiff's filings (Sec. 4.4).

6.1.3 **Adverse Action:** CPS initiated an intrusive investigation immediately afterward (Sec. 4.5).

6.1.4 **Causation:** Timing mirrors Missouri 2024 pattern (Sec. 4.3).

6.1.5 **Chilling Effect:** Investigation diverted Plaintiff's time and resources from federal litigation (Sec. 4.3).

6.1.6 **Harm:** Emotional distress, reputational injury, disruption of litigation (Sec. 4.11).

## Count II — Fourth Amendment Unlawful Entry

6.2.1 **Entry:** Harper entered Plaintiff's home (Sec. 4.6).

6.2.2 **No Warrant:** No warrant or court order existed (Exh B).

6.2.3 **No Exigency:** Children were safe and visible (Sec. 4.6).

6.2.4 **Under Color of Law:** Harper acted as CPS investigator.

6.2.5 **Harm:** Emotional distress; invasion of privacy (Sec. 4.11).

## Count III — Fourteenth Amendment Family Integrity

6.3.1 **Liberty Interest:** Plaintiff is parent of minor children (Sec. 4.7).

6.3.2 **Interference:** Attempted private interviews (Sec. 4.7).

6.3.3 **No Justification:** No emergency or court order (Exh B).

6.3.4 **Conscience-Shocking:** Repeated across states (Sec. 4.3).

6.3.5 **Harm:** Emotional distress to children (Sec. 4.11).

## Count IV — Abuse of Process (Kentucky Law)

6.4.1 **Ulterior Purpose:** Investigation followed Plaintiff's filings (Sec. 4.4).

6.4.2 **Improper Use:** Reliance on false Missouri data (Sec. 4.2).

6.4.3 **Harm:** Emotional distress and invasion of privacy (Sec. 4.11).

## Count V — Defamation / False Report (Kentucky Law)

6.5.1 **False Statement:** Harper repeated false Missouri label (Sec. 4.5).

6.5.2 **Publication:** Statement recorded and shared (Exh A).

6.5.3 **Fault:** Harper admitted no verification (Sec. 4.5).

6.5.4 **Harm:** Reputational injury and emotional distress (Sec. 4.11).

## Count VI — Monell Liability (County + CHFS/DCBS)

6.6.1 **Policy/Custom:** Warrantless entry and unverified reports (Sec. 4.9).

6.6.2 **Deliberate Indifference:** Supervisors approved investigation (Sec. 4.9).

6.6.3 **Causation:** Policies caused constitutional violations (Sec. 4.9).

6.6.4 **State Actor:** CHFS/DCBS/CPS acted under color of law.

## SECTION VII — DAMAGES (Expanded)

### 7.1 Compensatory Damages

7.1.1 Emotional distress to Plaintiff.

7.1.2 Emotional harm to children (multi-state pattern).

7.1.3 Reputational damage from false allegations.

7.1.4 Loss of time, resources, and disruption of federal litigation.

7.1.5 Invasion of privacy and family integrity.

### 7.2 Punitive Damages

7.2.1 Against individual defendants for reckless disregard of rights.

## 7.3 Injunctive Relief

7.3.1 Correction of interstate data.

7.3.2 Prohibition on further reliance on false Missouri information.

7.3.3 Protection against retaliatory investigations.

## SECTION VIII — JURY DEMAND

8.1 Plaintiff demands a trial by jury on all issues so triable.

## SECTION IX — PRAYER FOR RELIEF

Plaintiff respectfully requests:

9.1 Compensatory damages.

9.2 Punitive damages.

9.3 Declaratory relief.

9.4 Injunctive relief.

9.5 Costs and fees.

9.6 Any other relief the Court deems just.

## SECTION X — EXHIBIT LIST

10.1 Exhibit A — Transcript / Recording of CPS Visit

10.2 Exhibit B — Affidavit

10.3 Exhibit C — Retaliation Timeline

10.4 Missouri 2024 Video Evidence

## SECTION XI — SERVICE ADDRESSES

**11.1 Defendant Hope Harper**

*In her individual capacity*

Kentucky Cabinet for Health and Family Services

Department for Community Based Services

**McCracken County DCBS Office**

**2855 Jackson Street**

**Paducah, KY 42003**

**11.2 Defendants Unknown CPS Workers 1–3**

*In their individual capacities*

Service to be completed upon identification.

Temporary service through:

Kentucky Cabinet for Health and Family Services

Department for Community Based Services

**2855 Jackson Street**

**Paducah, KY 42003**

**11.3 Defendants John/Jane Doe Supervisors 1–3**

*In their individual and official capacities*

Service to be completed upon identification.

Temporary service through:

Kentucky Cabinet for Health and Family Services

Department for Community Based Services

**275 East Main Street**

**Frankfort, KY 40621**

**11.4 Defendant Cabinet for Health and Family Services (CHFS)**

*Entity capacity*

Office of Legal Services

Cabinet for Health and Family Services

**275 East Main Street, 5W-A**

**Frankfort, KY 40621**

**11.5 Defendant Department for Community Based Services (DCBS)**

*Entity capacity*

Department for Community Based Services

Cabinet for Health and Family Services

**275 East Main Street**

Frankfort, KY 40621


**11.6 Defendant Child Protective Services (CPS)**

*Entity capacity*

Child Protective Services

Department for Community Based Services

**2855 Jackson Street**

**Paducah, KY 42003**


**11.7 Defendant McCracken County**

*Municipal capacity*

McCracken County Judge Executive's Office

**300 Clarence Gaines Street**

**Paducah, KY 42003**

---

---

**SECTION XII — SIGNATURE PAGE**

/s/ Gregory Allen Peet Sr

Respectfully submitted,

Gregory Allen Peet Sr.

**Pro Se** Plaintiff

3901 Hinkleville Rd

Paducah, Ky 42001

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S CLAIMS

*(Detailed, fact-integrated, case-supported, and actor-specific)*

## I. INTRODUCTION

1. This Memorandum of Law demonstrates that the CPS investigation conducted by Defendant Hope Harper and other CPS personnel was unlawful under the Fourth Amendment, Fourteenth Amendment, First Amendment, Kentucky statutory law, Kentucky administrative regulations, and federal child-protection standards.

2. The allegations read to Plaintiff by Harper did **not** meet the statutory threshold for a child-protective investigation under **KRS 600.020, KRS 620.010–620.050,** or **922 KAR 1:330,** and the investigation was initiated primarily on the basis of **false Missouri data, status-based assumptions,** and **retaliatory motive** following Plaintiff's protected legal activity.

## II. FACTUAL SUMMARY RELEVANT TO LEGAL ANALYSIS

3. Harper stated the following allegations as the basis for the investigation:
    A. "Living in a hotel"
    B. "Five minor kids; single mom"
    C. "Adult male identified as Gregory Allen Peet"
    D. "Common-law married"

E. "Stepfather figure"

F. "Age 60 or 31"

G. "Convicted child sex offender out of Missouri"

H. "Kids appear thin / malnourished / uncared for"

I. "Only youngest child appeared fed"

J. "Kids not attending school"

K. "No vehicle / no transportation / no tags"

L. "Mainly they took it because of him being a sex offender and being around kids."

3. Harper admitted:

    a. She did **not** verify any allegation.

    b. She did **not** check Missouri records.

    c. She did **not** check Kentucky records.

    d. She did **not** check school enrollment.

    e. She did **not** check for exigency.

    f. She did **not** check for court orders.

    g. She did **not** check for supervision status.

    h. She did **not** check for any actual harm.

4. Plaintiff is **not** on parole, probation, or supervision.

5. No allegation described **current harm**, **specific neglect**, or **immediate danger**.

### III. THE REPORT DID NOT MEET THE LEGAL THRESHOLD FOR A CPS INVESTIGATION

**A. Kentucky Law Requires Specific, Credible Allegations of Abuse or Neglect**

6. Under **KRS 600.020**, abuse or neglect requires:

   a. Actual harm,

   b. Substantial risk of harm,

   c. Or failure to provide essential care.

7. None of the allegations meet this definition.

   a. **Living in a hotel**

      i. Not abuse;

      ii. Not neglect; and

      iii. Not illegal.

   b. **Presence of an adult male**

      i. Not abuse;

      ii. Not neglect; and

      iii. Not illegal.

   c. **Common-law marriage**

      i. Kentucky does not recognize it,

      ii. Legally married Grand Island, Nebraska since May 25, 2016;

      iii. Not abuse;

      iv. Not neglect; and

      v. Not illegal.

   d. **Age discrepancies**

      i. Irrelevant.

   e. **"Sex offender" allegation**

    i.    False;

    ii.    Even if true; and

    iii.    **status alone is not abuse or neglect**.

f.  **Thin / malnourished / uncared for**

    i.    Vague;

    ii.    Unverified;

    iii.    contradictory;and

    iv.    Unsupported.

g.  **School attendance**

    i.    Harper did not verify with the district;

    ii.    been enrolled in KY school home school system since 2024;

    iii.    Kentucky School rejected JP school app do to Missouri False School reporting; and

    iv.    Homeschooling is legal.

h.  **Transportation issues**

    i.    Not abuse;

    ii.    Not neglect; and

    iii.    Not illegal.

i.  **"Mainly because he is a sex offender"**

    i.    This is **not** a lawful basis for investigation; and

    ii.    Deliberate indifference.

## IV. CPS VIOLATED MANDATORY SCREENING REQUIREMENTS

8. Under **922 KAR 1:330,** CPS must:

    a. Conduct an initial screening;

    b. Verify allegations;

    c. Determine credibility;

    d. Confirm statutory definitions;

    e. Document screening; and

    f. Only investigate if the threshold is met.

9. Harper admitted she did none of these.

10. This is a **per se violation** of Kentucky administrative law.

## V. FOURTH AMENDMENT VIOLATIONS

### A. Warrantless Entry Is Presumptively Unconstitutional

- *Payton v. New York,* 445 U.S. 573 (1980)
- *Brigham City v. Stuart,* 547 U.S. 398 (2006)

11. Harper entered Plaintiff's home:

    a. Without a warrant;

    b. Without consent; and

    c. Without exigent circumstances.

12. This is a **clear Fourth Amendment violation.**

### B. CPS Workers Must Comply With the Fourth Amendment

- *Calabretta v. Floyd,* 189 F.3d 808 (9th Cir. 1999)

- *Good v. Dauphin County Social Services*, 891 F.2d 1087 (3d Cir. 1989)

13. CPS cannot enter a home without:

    a.  A warrant;

    b.  Consent; or

    c.  Immediate danger.

14. Harper had none.

## VI. FOURTEENTH AMENDMENT VIOLATIONS — FAMILY INTEGRITY

15. Parents have a fundamental right to the care, custody, and control of their children.

- *Troxel v. Granville*, 530 U.S. 57 (2000)

- *Santosky v. Kramer*, 455 U.S. 745 (1982)

16. Harper attempted to:

    a.  Separate the children;

    b.  Interview them privately;

    c.  Without consent;

    d.  Without a court order; and

    e.  Without exigency.

17. This violates:

    a.  The Fourteenth Amendment

18. **KRS 620.072**

    a.  *Doe v. Heck*, 327 F.3d 492 (7th Cir. 2003)

## VII. FIRST AMENDMENT RETALIATION

19. Plaintiff engaged in protected activity:

    a.  Filing legal actions;

    b.  Sending demand letters; and

    c.  Pursuing federal litigation.

20. Harper admitted the investigation was triggered "mainly" by the false Missouri label —
which arose **immediately after Plaintiff's filings**.

### Elements of retaliation:

1.  Protected activity — *BE&K Construction Co. v. NLRB*, 536 U.S. 516 (2002)

2.  Knowledge — Harper knew

3.  Adverse action — CPS investigation

4.  Causation — *Hartman v. Moore*, 547 U.S. 250 (2006)

5.  Chilling effect — *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999)

**All elements are met.**

## VIII. MONELL LIABILITY — ENTITY AND COUNTY DEFENDANTS

21. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), liability attaches
when:

    a.  A policy;

    b.  Custom;

    c.  Practice; or

    d.  Failure to train; and

    e.  causes constitutional violations

22. Here:

    a.  CHFS/DCBS relied on false Missouri data;

    b.  No screening occurred;

    c.  No verification occurred;

    d.  No training on constitutional limits;

    e.  County allowed CPS to operate without oversight; and

    f.  Harper admitted the investigation was based on status, not conduct.

23. This is textbook Monell liability.

## IX. CONCLUSION

24. The CPS investigation was unlawful because:

    a.  The report did not meet statutory thresholds

    b.  CPS violated mandatory screening rules

    c.  Harper entered without a warrant, consent, or exigency

    d.  Harper attempted unlawful child interviews

    e.  The investigation was retaliatory

    f.  The investigation relied on false Missouri data

    g.  Supervisors and agencies failed to train or supervise

    h.  County and state entities maintained unconstitutional customs

25. These facts, combined with the case law above, establish violations of:

    a.  The **Fourth Amendment**

    b.  The **Fourteenth Amendment**

    c.  The **First Amendment**

    **d. Kentucky statutes**

    **e. Kentucky administrative regulations**

    **f. Federal child-protection standards**

26. Plaintiff is entitled to relief.

/s/ Gregory Allen Peet Sr

Gregory Allen Peet Sr

Pro Se

3901 Hinkleville Rd

Paducah, KY 42001

peety5252@gmail.com

Ph 573-805-9444